## ST. LOUIS & S. F. R. CO. v. BRYAN.

No. 1050.   Opinion Filed November 14, 1911.

(119 Pac. 581.)

**APPEAL AND ERROR** — Review — Harmonizing General Verdict and Special Findings.   Where the general verdict of a jury and the special findings of fact on interrogatories can be harmonized and made to agree by taking into consideration the entire record and construing the same liberally for that purpose, it is the duty of the court to so harmonize them; and it is authorized to disturb the general verdict in those cases only where upon no reasonable hypothesis, under the pleadings and the evidence, they can be harmonized.

(Syllabus by the Court.)

*Error from District Court, Kiowa County; G. A. Brown, Judge.*

Action by T. F. Bryan against the St. Louis & San Francisco Railroad Company.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*W. F. Evans* and *R. A. Kleinschmidt,* for plaintiff in error.

*P. K. Morrill* and *O. B. Riegel,* for defendant in error.

DUNN, J.   This case presents error from the district court of Kiowa county, and is an action brought by defendant in error, as plaintiff, against the plaintiff in error, to recover damages for injuries sustained at a grade crossing of defendant's railroad where the same passed over one of the streets of the town of Snyder.   Plaintiff's petition set forth the facts concerning the accident, which the defendant answered, denying its own negligence and averring contributory negligence on plaintiff's part.   On the issues thus made the case came on for trial before a jury, which, on hearing the evidence, returned a verdict in plaintiff's favor for $300, on which judgment was rendered, to reverse which the cause has been filed in this court.

There is virtually no controversy over the facts in the case, which may be epitomized as follows:   Plaintiff had resided in the vicinity of Snyder for three years and had frequently passed over the crossing in question and was perfectly familiar with the same.   On the morning of October 10, 1906, he had driven

in the wagon, drawn by a team of mules, to the Farmer's Gin, which was located some distance north of the right of way and east of the street on which the accident occurred. The railroad passes through the town east and west and is intersected at right angles by the street mentioned; the tracks are straight and on level ground, and consisted at this crossing of, first, a team track at the extreme north, then another track about thirty feet to the south thereof, and then the main track ten feet south of that. On the day in question there was a line of box cars on the first side track north of the main track which extended from some distance in the street westward for a space of about six hundred feet. Several gins in the immediate vicinity of the railroad were running and making the usual noise incident thereto, and also a freight engine on the side track near this crossing blowing off steam. The plaintiff, driving an ordinary lumber wagon to which was hitched a team of young mules, started from the Farmer's Gin on the north side of the track and drove south at a jog trot to the railroad crossing. All of the defendant's main line west was obstructed from plaintiff's view by the box cars. In driving south toward the crossing, plaintiff testified that the first track to which he came had a box car standing on the east of the road at which his mules shied and stopped. He says:

"I looked and listened and went on; they bore to the west; I went on, started then south, and there was another car on the next track which extended up into the street too. Q. On which side of the street was that car? A. On the west side. Q. What kind of a car was it? A. A box car. Q. About how far did it extend into the street? A. Well, possibly the whole length; I don't know exactly; something like full length of the car into the street. Q. State what you did there. A. The mules shied at the car and I stopped; I had to bear east to get around those cars; I looked and I listened for the train and I seen nothing nor heard nothing. Q. Then what did you do? A. I started and went on south going on across."

It is conceded that the first point between the gin yard, where plaintiff started, and the main track, where the injuries occurred, at which the plaintiff could see along the main track to the west, was about eight feet north of the main track, being at the point

just after he cleared or passed the line of box cars. There is no claim made here that the defendant was not guilty of negligence. The sole contention is that the plaintiff was guilty of contributory negligence, and that the answers made by the jury to the special interrogatories propounded proved contributory negligence on the part of plaintiff so clearly that they should be held to control the general verdict, which should be set aside and judgment rendered for defendant. Sec. 5806, Compiled Laws Okla. 1909.

The foregoing statement of facts will, in our judgment, clear the connection which the interrogatories and answers bear to the subject under discussion without setting them all out at length. Those which are pertinent and upon which counsel for defendant rely are as follows:

"When the plaintiff cleared the line of box cars driving toward the crossing, how far away from the crossing was the engine of defendant? A. About 25 feet.

"When plaintiff's team of mules reached the north rail of the main track, how far away was defendant's engine visible to plaintiff? A. About 25 feet.

"At what point between the gin yard and the main track could the plaintiff first see down the main track without obstruction? A. About 8 feet north of main track.

"Did the plaintiff stop at that point and look for approaching trains? A. No.

"How far from the main track was the plaintiff's wagon when it was first seen by the fireman or engineer of said train from the crossing at that time? A. About 8 feet.

"How far was the engine of said train from the crossing at that time? A. About 15 feet.

"Could the defendant's train then have been stopped in time to avoid a collision with the plaintiff? A. No, sir.

"At what rate was the defendant's train traveling? A. Fifteen to eighteen miles per hour."

Now, the question is, Are the facts here disclosed sufficient to show contributory negligence on plaintiff's part? The reason and rule governing the force and effect to be given to special findings made in answer to interrogatories is stated at pages 45 and 46 of Clementson on Special Verdicts, and is as follows:

"The submission of interrogatories under the statute is a sort of 'explanatory opening' into the abdominal cavity of the general verdict (if I may be pardoned a surgical metaphor), by which the court determines whether the organs are sound and in place and the proper treatment to be pursued. The general verdict and special findings are considered together, and anything necessary to the right to judgment of the party in whose favor the general verdict is rendered, which is not found in the answers, is presumed to be included in the general verdict. There is therefore no necessity that the answers should cover all the issues, nor does the statute contemplate that they should. The general verdict is controlled by the special findings only when the two are irreconcilable. The latter furnishes a basis for judgment only when it is apparent that upon no conceivable hypothesis under the pleadings and evidence admissible thereunder can the findings be true and the party in whose favor the general verdict is rendered have ground left to stand upon."

The doctrine there announced has received general recognition. *Solomon Railroad Co. v. Jones,* 34 Kan. 443; *Bevens v. Smith,* 42 Kan. 250; *Drinkwater et al. v. Sauble,* 46 Kan. 170; *Moeser et al. v. Lewis,* 68 Kan. 485.

The court instructed the jury fully upon the proposition that negligence on the part of plaintiff contributing to his own injury would defeat recovery on his part, and the general verdict returned included within it a finding that plaintiff was free from contributory negligence. The question here presented, therefore, is, Do the answers to the special interrogatories above set out present such an irreconcilable conflict between the conclusions of the jury on this proposition that this court can say as a matter of law that plaintiff was guilty of contributory negligence and that the jury was in error when it found him free therefrom? In the determination of this question it is our duty, if possible, to harmonize the general verdict with the special findings of fact, if they can be made to agree by taking into consideration the entire record of the case and construing the same liberally for that purpose. *Bevens v. Smith, supra.* It is to be noted that, on account of defendant's obstructing a view of the main line over which the train inflicting the injuries passed, plaintiff was unable to see the approach of the train and that the first point

at which he was able to see it, by reason of this obstruction, was after he had passed the box cars on his road across the track. The jury finds that when he passed these cars he did not stop nor look for approaching trains, and counsel for defendant contends that, by reason of this fact, he was guilty of contributory negligence, insisting that it was his duty after having passed the string of box cars and could look to the west, that he should have stopped his team and backed off the track rather than have gone forward as he did.   Even a casual consideration of the facts as they presented themselves to plaintiff at that fraction of a second of time is sufficient, in our judgment, to demonstrate the futility of the contention.   Plaintiff, in his wagon, driving, was certainly not less than from twelve to fifteen feet back of the heads of his mules.   When he was in a position to see the train which was approaching, the facts found demonstrate that his mules were then absolutely upon the track, with a train but twenty-five feet away bearing down upon them at the rate of from fifteen to eighteen miles an hour, and it would have been virtually impossible, in our judgment, for plaintiff to take any action, as the situation presented itself to him, which would be held on his part to be contributory negligence.   The fact that he or his team escaped at all, under the facts found by the jury, is little less than miraculous.

Finding as we do that there is no conflict between the verdict and the answers to the special interrogatories, the judgment of the trial court is affirmed.

TURNER, C. J., and KANE, J., concur; HAYES and WILLIAMS, JJ., absent and not participating.