No. 23,911.

Lizzie E. Gilliland, *Appellee,* v. Edgar Zinc Company, *Appellant.*

SYLLABUS BY THE COURT.

1. Compensation Act—*Overheated Workman Drinking Ice Water—Death Caused by Accident Arising in Course of Employment.* A workman employed to haul ashes at a smelting plant became overheated at his task and drank ice water, which caused congestion of the vascular system, from which he died within one hour. *Held,* that within the scope and purpose of the workmen's compensation act, the death was caused by an accident arising out of and in the course of his employment.

2. Same—*Interest of Minor Children Must Be Protected.* Under the circumstances outlined in section one of the syllabus, where the deceased workman left a widow and two minor children, and no guardian of the estates of the children participated in the action in their behalf, the widow is only entitled to one-half the statutory compensation; and the defendant may withhold payment of the other half until a binding settlement or adjudication can be had between the company and some person authorized to act for the minor children.

Appeal from Montgomery district court; Charles D. Shukers, judge *pro tem.* Opinion filed October 7, 1922. Modified and affirmed.

*W. N. Banks, O. L. O'Brien,* and *Walter L. McVey,* all of Independence, for the appellant.

*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

Dawson, J.: The plaintiff brought this action for compensation for the death of her husband, an employee of the defendant company, who, as she alleged, became overheated on a warm afternoon while hauling ashes from defendant's smelting plant, and who while so overheated drank ice water and was seized with acute congestion and died the same afternoon.

The evidence tended to show these facts. The arbitrator found that the defendant and its deceased employee were working under the compensation act; and—

"III. That the employment of the said S. H. Gilliland required him to use a one-horse cart, which he shoveled full of cinders and hauled several yards to the dump; that the cinders were shoveled into the cart by hand, and that the cinders were warm and sometimes hot.

"IV. That the 3d day of May, 1920, was on Monday; that it was a warm day for the time of year. . . .

"V. That the place where the cinders were loaded was on the west side of

some tall furnace buildings, in full glare of the sun, and that just inside each furnace building and at easy access to the employes was a fountain for drinking containing ice cold water.

"VI. That on Monday, May 3d, 1920, S. H. Gilliland worked all day until he was stricken about four o'clock in the afternoon; that about two-fifteen (2:15) o'clock in the afternoon, he was seen to enter the furnace building for water, but there is no evidence that he had, or had not, entered the building for water thereafter, and prior to his being stricken.

"VII. That about four o'clock of said day, Gilliland was seen to be acting queerly; that he seemed weak, and unable to lift the shovel; that he complained of being sick; that after loading his cart, in attempting to climb upon the cart, he fell down between the horse and cart; that he climbed on the cart and started to drive toward the dump when he fell back on the cinders, unconscious, and so remained until his death, which occurred in about one hour after he was stricken.

"VIII. That Dr. Seacat, a regularly practicing physician, in the employ of the defendant company, was called; that Dr. Seacat arrived at least thirty (30) minutes before Gilliland died, examined and treated him in one of the defendant's buildings at the plant where Gilliland worked; that in the opinion of Dr. Seacat, Gilliland died from 'congestion, or distention of the vascular system—the filling up of the veins, and probably the surface arteries, due to a constriction of blood vessels of the vital organs, produced from the shock due to taking cold water into an overheated system'; that the evidence, though partially circumstantial, fairly establishes the fact that the deceased died from said cause so induced."

On these findings, the arbitrator's and trial court's conclusion of law was that the plaintiff's husband had "died from an accident arising out of and in the course of his employment," and judgment was entered accordingly.

Defendant challenges the correctness of this judgment. Among the precedents relied on defendant cites *Cox v. Refining Co.,* 108 Kan. 320, 195 Pac. 863, 19 A. L. R. 90 and note, 95-107, where a workman in the course of his employment was seized with a periodically recurring epileptic fit which caused him to fall and injure himself. Compensation was denied, but there the injury was not due to his employment; it did not arise out of his employment nor because of it. The court said:

"Cases there are too, many of them, where workmen by reason of constitutional infirmities are predisposed to sustain injuries while engaged in their labor, yet the leniency and humanity of the law permit them to recover if the employment itself contributes in some degree to bring about or intensify the physical condition which renders them susceptible to such accident and consequent injury. But in all such cases the employment must have some definite, discernible relation to the accident. . . .

"In this case if the added factor of his labor had aided in provoking the

Gilliland v. Zinc Co.

epileptic fit, it would bring the present case within the rule, and we would not hesitate to say that there was an accident arising out of the employment. But here there was no factor inherent in the employment or arising out of it which can be characterized as an accident which can be added to the disease as a contributing cause of plaintiff's injury." (pp. 324, 325.)

Here there was the added factor of the overheating, traceable to the workman's task of shoveling warm ashes on that unusually warm afternoon, and this brought about the condition which gave such sudden and fatal effect to the drinking of the ice water. This justified the trial court's conclusion that within the scope and intent of the workmen's compensation act the plaintiff's husband's death was caused by an injury arising out of his employment as well as in the course of it.

There is, however, in this case a precautionary matter which needs attention. The deceased workman is survived by two minor children whose interest must be protected, and it is also important that the defendant be assured that the payment of the statutory compensation and judgment will protect it from further claims on behalf of these minors.

The trial court ruled:

"3. That a guardian of the persons and estates of said minors, Glen and Delbert Gilliland, should be appointed, and the above compensation be paid one-half to the plaintiff, Lizzie E. Gilliland, and one-half to the guardian of the said minors, to be used for their care, support, and education."

Until some such procedure as that suggested by the trial court is followed, the defendant need not pay the judgment in full. For the present, the satisfaction of that part of the judgment separately decreed to the plaintiff herself is sufficient; and the remainder can await such disposition of the cause as will protect the interests of the minors and protect the defendant from further demands on their behalf. Thus modified the judgment will be affirmed.