No. 30,269.

KATHERINE HARMON, and EDWARD HARMON, MARY JOE HARMON and MARGARET HARMON, by Their Mother and Next Friend, KATHERINE HARMON, *Appellees*, v. THE LARABEE FLOUR MILLS COMPANY, doing business as THE INTERIOR MILLS COMPANY, *Appellant.*

(4 P. 2d 406.)

Opinion filed November 7, 1931.

*Hugh T. Fisher, Irwin Snattinger, E. B. Smith, Harry C. Blaker,* all of Topeka, and *E. R. Adams,* of Kansas City, Mo., for the appellant.

*Lester M. Goodell* and *Randal C. Harvey,* both of Topeka, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action under the workmen's compensation law as it existed prior to the enactment of 1927. Judgment was for plaintiffs. Defendant appeals.

Daniel F. Harmon started to work for the Larabee Flour Mills Company on June 11, 1927. He worked that day and laid off on the 12th because it was Sunday. On the 13th he worked, and a minute or two after he rang the time clock to quit work he dropped dead. This action was brought by his wife and minor children to recover compensation under the law as it existed prior to 1927. In order for them to recover it was necessary for appellees to prove by a preponderance of the evidence that death resulted from personal injury by accident, arising out of and in the course of employment on, in or about defendant's factory. The case was submitted to a jury. The jury returned a verdict for plaintiff based on a seven-day week. On a motion for a new trial the court found as a matter of law that the verdict should have only been based on a six-day week. Accordingly the verdict was reduced and judgment entered for that amount. The milling company appeals from the judgment allowing any recovery, and the plaintiffs appeal from the part of the judgment reducing the recovery from a seven-day week to a six-day week basis.

The first error complained of is the overruling of the demurrer of defendant to plaintiffs' evidence.

The circumstances that are available to us in our inquiry as to the cause of the death are few. Deceased had led a rather sedentary life. He was about forty years old. This was the first job he had ever had that required a great deal of muscular exertion. His work consisted of lifting sacks of flour that weighed some ninety and some one hundred and forty pounds. It was necessary that he get these sacks from a pile a little higher than his head and put four or five of them on a truck. He then had to either lift them off the truck to load a car or had to lift them up to the mouth of a feeder. Until a man got onto the hang of handling the truck he was apt to be carrying the whole weight of the load and the truck too. On the first day he did not complain, but the foreman noticed that he was in distress. On the second day he went to work at 3 o'clock in the afternoon and at 5 o'clock complained that he was in distress and might have to

quit. At that time the mill foreman listened to his heart and it was beating very fast. After some discussion he went back to work. At about 6:30 he told the night foreman that he would have to quit. There is a slight conflict here. Appellant contends that the foreman told him that the company did not pay for half hours and that he should sit around till 7 and then punch the clock. It contends that as a matter fact he did sit around about half an hour without doing any work at all.

The record, however, convinces us that as a matter of fact he did continue in the work he had been doing till a few minutes before he dropped dead. Appellant's contention that the demurrer to the evidence should have been sustained is based on the argument that the circumstances above set out and the evidence of the doctors do not prove any causal connection between the death of deceased and his employment.

This court has held that in a case where "the physical structure of the man gave way under the stress of his usual labor" the accident was compensable. (*Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793.) This case is followed by many others in this and other jurisdictions. This giving way is treated as an accident within the meaning of the statute.

As further evidence of the fact that the death of deceased occurred as the result of something in the physical structure of the man which gave way under the stress of his usual labor we have the physical facts and circumstances that have been detailed heretofore. In addition to that we have the evidence of five doctors, two of whom examined him. Without detailing the testimony, three of these men testified that in their opinion the unusual muscular effort in which the deceased had been engaged caused his death and two of them testified that in their opinion the muscular effort had nothing to do with the death. These two testified, however, that it would have been possible for the death to have resulted from the unusual effort.

This issue of fact was submitted to the jury. The jury under proper instructions found by its general verdict in favor of the contentions of appellees and answered a special question, as follows:

"In the performance of his duties in his employment by the defendant, did the physical force and muscular effort necessary to be used by Daniel F. Harmon so affect his then physical condition as to become a contributing factor to his death? A. Yes."

We conclude that there was sufficient evidence to sustain this finding.

Appellant urges that because the medical men could not testify as to just what it was that gave way in the man, the proof that there was a causal connection between the giving way and the work failed. This court has held otherwise. (*Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 193 Pac. 351; *Stringer v. Mining Co.*, 114 Kan. 716, 220 Pac. 168; *Gilliland v. Zinc Co.*, 112 Kan. 39, 209 Pac. 658, and cases there cited.)

Appellant urges that even admitting that death grew out of the employment, the accident which caused the death did not occur in the course of the employment, because it did not occur till after deceased had not only quit work but had left the employ of appellant. This argument is not good, however, because, as heretofore announced in this opinion, we hold that all that is necessary to bring the accident under the act is for it to have been proved that death resulted from what happened while deceased was working.

Complaint is made because the court refused to submit certain special questions that were requested by appellant. As to one of these there was no dispute in the evidence on that point and there could have been no prejudice in refusing to ask the jury that. The substance of the other was included in the ones that were asked.

Appellant urges that it was error for the court to instruct the jury that it was claimed that deceased "at the time of his death was not in a normal, healthy physical condition and that such impaired physical condition, together with the energy and force necessary to be used by him in performing his work as floor man or trucker for defendant, or feeder, brought about his death," because there was no such claim as that made by appellees. We can hardly see what caused the court to give this instruction since no claim of that kind was made by appellee. However, it appears that it was more in favor of appellant than appellee. We can see no reason for reversing the judgment of the trial court on that account.

When qualifying the jury, appellee asked each juror as to the ownership of stock in a certain insurance company. There is no evidence that the questions were not asked in good faith. In the absence of this it is not error to inquire of a prospective juror as to his interest in the insurance company which is defending the action. (*Peters v. Cavanaugh,* 132 Kan. 244, 295 Pac. 693.)

As has been heretofore noted, the jury returned a verdict for

plaintiffs based on a seven-day week. The court found, as a matter of law, that the verdict should have been based on a six-day week. The judgment was reduced accordingly. There is a cross appeal here and this assigned as error. We find no evidence to sustain the finding of the jury based on the seven-day week. There was no error of the trial court in reducing the amount of the verdict.

The judgment of the trial court is affirmed.

HARVEY, J., not sitting.