No. 39,075

STATE OF KANSAS, *Appellant*, v. ONE BALLY CONEY ISLAND No. 21011 GAMING TABLE, a Prohibited Gambling Device, *Appellee*.

(258 P. 2d 225)

Opinion
filed June 6, 1953.

*Harold R. Fatzer,* attorney general, and *D. S. Hults,* special assistant attorney general, argued the cause, and *Paul E. Wilson,* assistant attorney general, and *Daniel O. Lardner,* county attorney, were with them on the briefs for the appellant.

*Vincent F. Hiebsch,* of Wichita, argued the cause, and *Milton Zacharias, Kenneth H. Hiebsch, J. R. Sheedy, Yale W. Gifford, Richard A. Render,* and *Albert L. Kamas,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This is an action *in rem* brought by the attorney general seeking to have condemned and destroyed a certain pinball machine designated as "One Bally Coney Island No. 21011."

The information, after giving a description of the pinball machine, alleged that it was a gambling device, adapted and designed for the purpose of playing thereon and therewith a game of chance for money or property. The machine had previously been seized under a search warrant and was then in the hands of the sheriff. The owner of the machine, after receiving notice of its confiscation, filed his answer admitting his ownership, and denying all other matters set forth in the information filed by the state. The parties entered into a detailed stipulation of the facts upon which the court made its findings. A brief summary of these facts is as follows:

The machine confiscated belongs to a class commonly known as a pinball machine in which one deposits a nickel. The player then by means of a spring-operated plunger and the use of the adjoining calibrated scale in regulating the impetus to be given propels five metal balls, one at a time, onto that portion of the playing field desired, and the ball travels down that portion of the playing field striking various pins and bumpers until it comes to rest in one of the numbered holes, at which time the corresponding number on the scoreboard squares is lighted. Upon securing a winning combination the player is awarded certain free games, the number depending upon his luck and skill. These free games or replays are automatically recorded on the machine. There are no slugs or other means by which the right to play can be transferred to another. The machine pays no money or tangible property. The only thing which the player receives for his money, in addition to

the amusement of playing the machine, is the chance to play these additional free games or replays.

The trial court, after making extended findings of fact, concluded as a matter of law that the replays automatically recorded on the pinball machine were not property within the meaning of G. S. 1949, 21-915, and rendered judgment for appellee.

The sole question presented in this case is whether the replays automatically recorded on the pinball machine or marble machine, which is the subject of this action, are money or property within the meaning of G. S. 1949, 21-915, which reads as follows:

"Every person who shall set up or keep . . . any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for *money or property*, . . . or shall keep a place or room to be used as a place for playing any game of cards for *money or property*, . . . shall on conviction be adjudged guilty of a felony, . . ." (Emphasis supplied.)

It is clear from reading the foregoing statute that the only gambling machines or devices here prohibited are those designed for playing a game of chance for *money or property*. Unless these free plays which may be won are "property" then the machine is not prohibited by this particular statute.

Over ten years ago we had occasion to pass upon this identical question, wherein a pinball machine was involved, whether free games won thereon constituted property within the meaning of the statute, and we stated in *State v. Waite*, 156 Kan. 143, 131 P. 2d 708, 148 A. L. R. 874:

"A particular 'pin-ball' machine or device — described more fully in the opinion—in no case 'pays' any money or tangible property. Upon deposit of a coin every player is enabled to play one round or game, with scores automatically registered. If certain scores are made the player is accorded the privilege of entertaining or amusing himself by playing additional games. Such additional games constitute the only thing which a player may win. *Held,* that the privilege of such additional entertainment or amusement is not 'property' within the meaning of G. S. 1935, 21-1508, and that therefore the machine does not fall within the prohibition of that statute." (Syl. 3.)

While in the *Waite* case we defined the word "property" within the meaning of section 21-1508, in the instant case the word "property" in section 21-915 is used in the same manner, and the same rule of law is applicable thereto.

Appellee relies on the *Waite* case in support of his contention that the judgment should be affirmed. Appellant recognizes our decision. However, he contends that the *Waite* case was a criminal

prosecution and that the instant case is an action *in rem* for the destruction of the machine, and that a more liberal rule applies.

Statutes for the seizure and destruction of property are highly penal and must be strictly construed against the state and in favor of the owner. They should not and cannot be enlarged or extended by courts with the aid of inferences, implication and strained interpretations, but such action must be fully justified by the statute. Its language cannot be enlarged beyond the ordinary meaning of its terms in order to carry into effect the general purposes for which the statute was enacted. (*Gayer v. Whelan*, 59 Cal. App. 2d 255, 138 P. 2d 763; *State v. One "Jack and Jill" Pinball Machine* (Mo. App. 1949), 224 S. W. 2d 854.)

The same basic question was involved in the *Waite* case as in the instant case, *i. e.*, "do free games or replays on a marble machine constitute personal property?"

Federal and state courts alike have recognized the rule as laid down in *State v. Waite*, supra. In *Washington Coin Mach. Ass'n v. Callahan*, 79 U. S. App. D. C. 41, 142 F. 2d 97, at page 99, it is stated:

"To the same effect is *State v. Waite*, 156 Kan. 143, 131 P. 2d 708, in which the term 'property' as used in an anti-gambling statute, was said to include goods, chattels, effects, evidences of rights in action, and all written instruments by which any pecuniary obligation, or money or right or title to property, real or personal, but that none of these should be expanded to include a free amusement feature like the one in question here. We think this is the correct rule to apply. See also *Gayer v. Whelan*, 59 Cal. App. 2d 255, 138 P. 2d 763, 765; *In re Wigton*, 151 Pa. Super. 337, 30 A. 2d 352, holding that the right or privilege to a second try or a replay for a high score on a machine of this kind is not a thing of material value and hence not property in the sense in which the word is used in defining a gambling device. Many similar additional cases to the same effect have been examined by us, the citation of which will add nothing to the reasoning, but which satisfy us that the balance of judicial opinion is on the side of construing the particular character of machine we are concerned with as not within the prohibition of the gambling laws."

To the same effect is *State v. One "Jack and Jill" Pinball Machine*, supra, at pages 859 and 860:

"Of course, a free game is not money, but is it property? This identical question was before the Supreme Court of Kansas in *State v. Waite*, 156 Kan. 143, 131 P. 2d 708, 148 A. L. R. 874. The Kansas Statute provided that the machine must be 'devised and designed for the purpose of playing any game of chance for money or property, . . .'

. . . An information had been filed against the defendant charging him

with violating that Section. The evidence showed that the machine gave free games, and only free games, upon the attainment of a certain score. In an exhaustive and well reasoned opinion, the Supreme Court of Kansas unanimously held that a free game was not property. They cited the Kansas statutory definition of property which is more inclusive than ours. If we were considering a statute that merely condemned the keeping of *gambling devices* without further definition, we could advert to general definitions of that term to ascertain what the legislature meant. But the legislature has not seen fit to leave the definition to the courts. They have specifically stated that before it is a gambling device, it must be designed for the purpose of paying off in money or property."

. . . . . . . . . . . . .

"The following cases from other jurisdictions construe statutory provisions practically identical with ours and hold that a free game or games are not property. These cases are interesting and to the point but an analysis of each would needlessly lengthen this opinion. *Washington Coin Machine Ass'n v. Callahan*, 79 U. S. App. D. C. 41, 142 F. 2d 97. *Chicago Patent Corp. v. Genco, Inc.*, 7 Cir., 124 F. 2d 725. *Davies v. Mills Novelty Co.*, 8 Cir., 70 F. 2d 424. *Commonwealth v. A Certain Gambling Device*, 151 Pa. Super. 346, 30 A. 2d 357."

It may also be noted that our opinion in the *Waite* case was rendered in the year of 1942. Since that time our legislature has met in general session on six different occasions and has not seen fit to amend the statute or change the rule of this court laid down therein. It would seem that a judicial construction placed upon its language by a united court for more than ten years must be deemed to have received the sanction and approval of the legislative bodies. If this court in the first instance mistook the purpose and intent of the statute, there has been an abundant opportunity for the lawmaking power to give further expression to its will, and that its failure to act amounts to a ratification of the interpretation placed upon that act by this court. Courts do not write legislaion. That is the function of the legislature. Our duty is to declare and apply legislative acts and to construe statutes and constitutions in accordance with the will of the law-making power where its construction becomes necessary. When such construction has been given to a law and finally established as a part thereof, it is as much a part of it as if embodied therein in plain and unmistakable language. When that situation exists, it is the province of the legislature alone to change the law if it deems advisable. The courts should not attempt it. (*Manley v. Mayer*, 68 Kan. 377, 380, 75 Pac. 550; *Thomas v. Industrial Comm.*, 243 Wis. 231, 10 N. W. 2d 206; *Larkin v. Hiittenmeyer*, 195 Okla. 669, 161 P. 2d 749; *Welborn v. Whitney*, 190

Okla. 630, 126 P. 2d 263; *U. S. v. Elgin, J. & E. Ry.*, 298 U. S. 492, 80 Law Ed. 1300, 56 S. Ct. 841; *Madrigal v. Industrial Commission*, 69 Ariz. 138, 210 P. 2d 967.)

In view of what has been said, we find no reason to change the rule of law laid down by this court in *State v. Waite*, supra. Our conclusion is that if mere possession of a pinball or marble machine is to be made an offense, the legislature should so provide. No provision having been made, the ruling of the trial court was correct, and its judgment is affirmed.